AMERICAN CONSUMER INDUSTRIES, INC., Employer-Appellant,

v.

David A. FEHL, Employee-Appellee (two cases).

David A. FEHL, Claimant-Appellant,

v.

AMERICAN CONSUMER INDUSTRIES, INC., Employer-Appellee.

Superior Court of Delaware, New Castle.

Submitted May 11, 1978.

Decided Aug. 9, 1978.

B. Wilson Redfearn and Jeffrey S. Marlin of Tybout & Redfearn, Wilmington, for employer-appellant/appellee.

Frederick W. Iobst of Young, Conaway, Stargett & Taylor, Wilmington, for employee-appellee/claimant-appellant.

LONGOBARDI, Judge.

This case involves cross-appeals from a decision of the Industrial Accident Board ("Board") awarding David Fehl ("Claim-

ant") 264 weeks of compensation for disfigurement under 19 *Del.C.* 2326(f) but denying Claimant's request for partial disability under 19 *Del.C.* 2325. Consolidated with the above-appeals is an appeal by American Consumer Industries ("Employer") from a decision by the Board granting Claimant total disability during the summer of 1977.

Claimant was injured June 6, 1975 while working the 4:00 p. m. to 12:00 a. m. shift for Diamond Ice and Coal Co., a division of American Consumer Industries. He suffered the amputation of the four fingers on his right hand at the proximate phalangeal joint and the amputation of his right thumb at the first phalange when his hand was caught in the saw blades of an ice cuber machine. At the time of his injury, Claimant was employed for ten months as a school teacher and was working at Diamond Ice and Coal prior to the end of the school year in preparation for working there as a summer employee. After the accident, Claimant received total disability payments until he returned to teaching in the fall and again during the summer of 1976. When Employer failed to pay benefits in the summer of 1977, Claimant filed a petition with the Board asking for those payments. The Board found that Claimant was entitled to those payments and Employer appeals. In addition, Employer appeals the Board's determination that Claimant is entitled to the maximum award for disfigurement. Claimant appeals from the Board's decision denying him partial disability due to his inability to hold two jobs during the school year.

Disfigurement awards are governed by 19 *Del.C.* 2326 and the amount to be awarded is the greater of: (1) the compensation found to be due for disfigurement without regard to the compensation for loss of use; or (2) the amount of compensation due for loss of use plus 20% thereof for disfigurement. Employer has appealed from the grant of maximum benefits for disfigurement on the ground that the Claimant's loss of use as determined by the schedule set forth in Section 2326 was not 220 weeks for loss of use of his hand but was 177½ weeks for the total loss of use of his four fingers and loss of use of one-half of his thumb.

The issue before the Court is the effect of the agreement entered into by Claimant and Employer giving Claimant compensation for loss of use for 220 weeks. Claimant contends that the agreement should be binding on the parties so that the disfigurement award should properly equal 264 weeks (220 weeks plus 20% of the 220). Employer contends that the agreement was entered into due to a mutual mistake but failed to offer any evidence to show that mistake. Pursuant to 19 *Del.C.* 2344, a voluntary agreement entered into between the parties and approved by the Board is final and binding unless modified under Section 2347. The Board approved the agreement between Claimant and Employer and took notice of that agreement at the hearing. A disfigurement award is of necessity based on the loss of use award. *Bagley v. Phoenix Steel Corporation,* Del. Supr., 369 A.2d 1081 (1977). Thus, the Board could properly take notice of the agreement by the parties that loss of use was to be compensated for 220 weeks and use that figure as a base upon which it could calculate the additional 20% for the disfigurement award.

In support of his argument for partial disability, Claimant alleges that during the school years of 1975–1976 and 1976–1977, but for his injury, he would have held a second job. The Board denied benefits and this Court must determine whether that decision was based on substantial evidence. *Johnson v. Chrysler Corporation,* Del.Supr., 213 A.2d 64 (1965). Claimant had only recently entered the teaching profession but his employment history prior to his injury was not one of a man holding two jobs. The evidence presented by Claimant in support of his intention to get a job in September, 1975, was speculative. Claimant apparently assumed that he would work for Diamond Ice and Coal, yet he had done nothing more than make that assumption. According to the management at Diamond Ice and Coal, they only employed second shift workers during the summer months. Once Claimant found out that his assumption was incorrect, he attempted to show that he would have gotten a part-time job as a painting contractor or as an auto mechanic, however, that evidence was not conclusive to show that the second job was more than a mere speculation. Claimant feels that his loss of a potential second job should constitute a partial disability on the holding in *Stanley Warner Corporation v. Slattery,* Del.Super., 235 A.2d 633 (1967). However, in that case, the claimant presented a long history of working two jobs, a history which the present Claimant does not have.

Claimant's second attack on the denial of benefits is that the testimony presented by Dr. Stark, Claimant's psychiatrist, showed that Claimant was unable to do any type of second job during the school years of 1975–1976 and 1976–1977. Dr. Stark testified that just going back to teaching required Claimant's total energy and that Claimant's mental state was such that the adjustment to going back to teaching was all that Claimant could handle. If that argument is carried to its extreme, then Claimant would have the Board award partial disability any time an employee, although able to return to his full-time job after an injury, states that he intended to have part-time employment as well but is now unable to do any work in addition to his full-time employment. Compensation for partial disability should be available only where claimant can establish that he has more than an intention to work part-time. Claimant, in the present case, has not shown that a second job would have been available to him during the school years in question, and thus, the Board's denial of benefits is supported by substantial evidence.

The final issue before the Court is whether Claimant should receive total disability benefits during the summer of 1977. Claimant was injured in June, 1975 and did receive total disability pursuant to an agreement between Claimant and Employer during that summer and again during the summer of 1976. Employer argues that once Claimant returned to his school teaching duties that agreement should have been

terminated since Claimant had returned to his primary employment. While, as a general rule, that theory is correct, this Claimant presents an exception to that general rule. Claimant is a school teacher and thus from September to June, Claimant, like all other school teachers, is employed in an occupation commensurate with his training and experience. During that time period each year, Claimant is not "totally disabled" as that term is defined in the Workmen's Compensation Law. However, during the summer months, Claimant is effectively unemployed each year and must seek temporary employment. His skills and training as a school teacher do not necessarily aid him in getting summer employment. Rather, as the evidence at the hearing showed, Claimant must seek work of an unskilled or semi-skilled nature. For that time period, Claimant's ability to find employment must be measured by looking to see the effect his industrial injury has on his ability to secure work. During the summer of 1975 and 1976, Claimant did receive total disability benefits and the Board found that there was an agreement between the parties as well as a mutual understanding that the total disability would be paid only during the summer months. Since it is appropriate for Claimant to receive such payments during the summer, it would be better if the agreement reflected that limitation. However, Employer's history of payments seems sufficient to indicate that there was such an understanding. If the Employer feels that Claimant's injury does not affect his ability to get summer employment, Employer should move to terminate the agreement through proper proceedings before the Board.

Finally, it should be noted that Claimant, in this case, presents a unique situation. Generally, employees do not have two distinct employment periods with differing types of employment. Here Claimant was a skilled worker for most of the year and was able to return to that employment despite his injury; however, for part of the year, Claimant was engaged in unskilled labor and during that part of the year, his ability to work was affected by his injury.

Accordingly, the decisions of the Board awarding Claimant 264 weeks of compensation for disfigurement and awarding Claimant total disability during the summer of 1977 are affirmed. The decision of the Board denying Claimant partial disability during the school years of 1975–1976 and 1976–1977 is also affirmed.

IT IS SO ORDERED.